IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT DUNTON, *et al.*,

    Plaintiffs,               No. 2:12-cv-0303 MCE AC

vs.

ALLSTATE INSURANCE CO.,

    Defendant.                ORDER
_____/

On April 24, 2013, the court held a hearing on defendant's February 26, 2013 motion for protective order. Stewart Altemus appeared for plaintiffs. Michael Barnes appeared for defendant. On review of the motion, the documents filed in support and opposition, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.   Facts Underlying Litigation

On the morning of October 21, 2008 at approximately 7:30 a.m., plaintiff Scott Dunton was driving to work after having stopped at a deli to pick up a sandwich for lunch when his vehicle was struck by another vehicle that was operated by an underinsured motorist.

1

Following the accident, plaintiff drove to his employer's shop to pick up some tools and then drove to Anderson High School ("the job site"), where Dunton was scheduled to begin work at 9 a.m.

Plaintiffs settled with the underinsured motorist for the $15,000 limit of his liability policy, and then demanded the remaining UIM limit ($85,000) from an Allstate insurance policy issued to Dunton Construction Co., Inc. ("Dunton Construction").

The parties agreed to enter arbitration on the value of plaintiff's claim. Almost one year later, however, defendant declined to enter arbitration until plaintiffs submitted a Worker's Compensation ("W.C.") claim on the theory that was plaintiff Dunton was driving "on the job" because he was driving to pick up tools to take to the job site.

Plaintiffs' position is that Dunton does not need to file a W.C. claim because he was not "on the job" at the time of the collision and therefore W.C. is unavailable to him.

B. <u>Relevant Procedural Background</u>

Plaintiffs filed suit on December 27, 2011 in the Shasta County Superior Court bringing claims against defendant for tortious breach of an insurance contract and breach of its covenant of good faith and fair dealing. Plaintiff seeks $85,000 in damages.

On February 3, 2012, this action was removed from Shasta County Superior Court based on the diversity of the parties and the $85,000 damages claim.

On April 3, 2012, the parties filed a Joint Status Report, where they maintained that they "plan to conduct discovery regarding all allegations in the complaint," Joint Status Report at 3:10; that they "do not propose conducting discovery in phases," <u>id.</u> at 3:21-22; and that they "do not propose discovery be limited to or focused on any particular issues. The parties agree there is no need to narrow the scope for permissible discovery under the Federal Rules of Civil Procedure," <u>id.</u> at 3:24-26.

Following receipt of the parties' Joint Status Report, the Honorable Morrison C. England, Jr. issued a Pretrial Scheduling Order setting May 24, 2013 as the discovery deadline.

Trial is set for March 24, 2014.

On March 12, 2013, the parties filed a stipulation to extend the discovery deadline. ECF No. 14. Judge England adopted this stipulation and extended the discovery deadline to July 24, 2013. ECF No. 15. All other dates in the Pretrial Scheduling Order remain unchanged.

C.  Discovery Dispute

At issue here are five deposition subpoenas served by plaintiffs on Allstate employees identified in defendant's initial disclosures and on an "Allstate Corporate Representative" familiar with the subject policy. Tran Decl. ¶ 4, Ex. A. Plaintiffs want to depose these individuals in relation to their bad faith claim.

Defendant moves for a protective order on the ground that the depositions are premature because the initial question that must be decided in this litigation is whether plaintiff should be directed to file a W.C. claim before proceeding to arbitration. Per Allstate, this litigation should proceed in the following manner:

Step One:   Through motion practice, answer the question whether plaintiff Dunton is required to file a W.C. claim.

Step Two:   If the answer is Yes, then plaintiff Dunton should file a W.C. claim and then the parties should proceed to arbitration. If the answer is No, the parties should proceed directly to arbitration.

Step Three: After the conclusion of arbitration, the parties should litigate plaintiff's bad faith claim.

Plaintiffs counter that defendant may not premise their participation in arbitration on plaintiffs' submission of a W.C. claim. Additionally, plaintiffs state that they will not submit a W.C. claim because to do so would subject them to criminal liability for making false and fraudulent statements. Next, they assert that the parties specifically stated in their joint status report that they do not propose to conduct discovery in phases, and that they do not propose

3

discovery be limited to or focused on any particular issues. <u>See</u> Joint Status Report at 3. Finally, plaintiffs argue that defendant waived its right to participate in arbitration.

In response, defendant argues that it did not waive its right to arbitration. It also asserts that it did contemplate a phased approach to this case, as reflected in its inclusion of the following paragraph in the Joint Status Report:

> Allstate contends that it is premature to set a trial date in this matter and that the issue of whether Mr. Dunton's claim is ripe for arbitration should be decided by motion. In the event the Court determines that Mr. Dunton must exhaust his right to workers' compensation benefits before proceeding to UIM arbitration, then Allstate contends the case should be dismissed without prejudice. On the other hand, in the event the Court concludes UIM arbitration is appropriate at this stage, then Allstate contends the case should be stayed pending completion of that arbitration. Either way, a trial date would be premature.

<u>See</u> Joint Status Report at 4:11-17.

## DISCUSSION

Generally, absent a court order limiting discovery, plaintiffs are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." <u>See</u> Fed. R. Civ. P. 26(b)(1). Courts may terminate or limit the manner and scope of a deposition in accordance with Federal Rule of Civil Procedure 26(c). Fed. R. Civ. P. 26(c). Rule 26(c) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed. R. Civ. P. 26(c)(1). If the court denies the motion for protective order in whole or in part, "the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2).

4

The party seeking the protective order has the heavy burden of demonstrating that "good cause" exists for the protection of the materials. Rivera v. NIBCO, Inc., 384 F.3d 822, 827 (9th Cir. 2004) (citation omitted). "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm.'" Id. (quoting Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211-12 (9th Cir. 2002)). This standard is not satisfied by "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." Id. (citing Phillips, 307 F.3d at 1211-12). Rather, a party seeking to obtain a protective order must make a "particularized showing of good cause." Phillips, 307 F.3d at 1211 (quoting San Jose Mercury News, Inc. v. U.S. Dist. Court-Northern Dist. (San Jose), 187 F.3d 1096, 1103 (9th Cir. 1999)).

Here, defendant seeks a protective order on the ground that phasing discovery would save all parties great expense and inconvenience. Defendant argues that plaintiffs should be prohibited from conducting discovery on their bad faith claim before the court has addressed the question of whether plaintiff should be directed to file a W.C. claim and whether the parties should proceed to arbitration. In resolving this dispute, the court turns to the standing Pretrial Scheduling Order, which was issued following consideration of the parties' Joint Status Report. Examination of the scheduling order reveals that Judge England did not phase or limit discovery in any way. Thus, absent a court order limiting discovery, plaintiffs may proceed with the depositions of defendant's employees. See Fed. R. Civ. P. 26(b)(1). To the extent defendant asserts that it did in fact contemplate a phased approach to discovery, the court notes that it never filed an objection to Judge England's order. Regardless, if defendant now seeks a modification, it may move for one before Judge England. At this time, however, the court does not find good cause for entry of a protective order.

////

////

////

1  Accordingly, IT IS HEREBY ORDERED that defendant's February 26, 2013
2  motion for protective order is denied.
3  DATED: April 24, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;dunt0303.disc